ANDREW SELESNICK (CSBN 160516)
*aselesnick@mrllp.com*
STACEY L. ZILL (CSBN 177268)
*szill@mrllp.com*
**MICHELMAN & ROBINSON, LLP**
15760 Ventura Boulevard, Fifth Floor
Encino, California 91436
Telephone: (818) 783-5530
Facsimile: (818) 783-5507

Attorneys for Counter-Plaintiff
COMPLETE INFUSION CARE, CIC INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NORTHWEST ADMINISTRATORS, INC.,

Plaintiff,

vs.

COMPLETE INFUSION CARE, CIC INC.; and DOES 1 through 10, inclusive,

Defendants.

---

COMPLETE INFUSION CARE, CIC INC.,

Counter-Plaintiff,

vs.

NORTHWEST ADMINISTRATORS, INC.; and ROES 1 TO 10, inclusive,

Counter-Defendants.

CASE NO: CV14-2755 SS

Hon. Suzanne H. Segal

**COMPLETE INFUSION CARE, CIC INC.'S FIRST AMENDED COUNTERCLAIMS FOR:**

1. **BREACH OF IMPLIED IN FACT CONTRACT**
2. **QUANTUM MERUIT**
3. **OPEN BOOK ACCOUNT**
4. **ACCOUNT STATED**
5. **GOODS AND SERVICES RENDERED**

**DEMAND FOR JURY TRIAL**

Disc. Cut-Off: June 16, 2015
Motion Cut-Off: July 14, 2015
Trial Date: October 6, 2015

Counter-plaintiff Complete Infusion Care, CIC Inc. ("CIC") alleges against counter-defendant Northwest Administrators, Inc. ("Northwest") and ROES 1 through 10, inclusive, as follows:

**PARTIES**

1. CIC is, and at all relevant times was, a corporation existing under the laws of the State of California, with its principal place of business in Los Angeles, California. CIC is a pharmacy that supplies specialty pharmaceutical products and provides related in-home infusion services.

2. CIC is informed and believes, and based thereon alleges, that Northwest is, and at all relevant times was, a corporation existing under the laws of the State of Washington, with its headquarters and principal place of business located in Seattle, Washington. CIC is further informed and believes, and based thereon alleges, that Northwest is, and at all relevant times was, entered into a contract with a third party pursuant to which it agreed to be responsible for the processing and payment of medical claims for treatment, care and services provided to participants in the Teamsters Miscellaneous Security Trust Fund ("Trust").

3. The true names and capacities of the counter-defendants named herein as ROES 1 through 10, inclusive, whether individual, corporate, associate, or otherwise, are currently unknown to CIC, and therefore CIC alleges that each of these fictitiously named counter-defendants is responsible in some manner for the events and wrongs sued upon. CIC will seek leave of this Court to amend its counterclaims to assert the true identities and capacities of the defendants named herein as ROES 1 through 10 when such identities and capacities have been ascertained.

/ / /

/ / /

4. CIC is informed and believes, and based thereon alleges, that at all relevant times, each counter-defendant was the representative, alter ego, agent and/or employee of each of the other counter-defendants and, in doing each of the things herein alleged, was acting within the scope of such relationship, agency and/or employment.

5. Northwest and the ROE counter-defendants are collectively referred to as "CIC," unless otherwise indicated.

**JURISDICTION & VENUE**

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391. CIC resides in this judicial district, and because a substantial part of the events and/or omissions giving rise to the causes of action set forth herein occurred within this judicial district.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because this is a civil action between citizens of different states and the matter in controversy, exclusive of interest and costs, exceeds $75,000.00.

**GENERAL ALLEGATIONS**

8. A.B. is a member of the Trust administered by Northwest who requested and received medical-related services and products from CIC at various times in 2012 and 2013.[1] The medication and services were medically necessary to treat his serious health condition and Northwest could not or would not locate any network provider that was ready, willing or able to provide the products and services CIC administered to A.B.

---

[1] The patient receiving the services at issue is identified by initials to protect the patient's privacy rights and to comply with applicable laws.

9. Prior to CIC providing care and treatment to A.B., Northwest was informed that CIC had been requested by A.B. to provide, and that CIC would be providing, care and treatment, including medication, to A.B. Moreover, prior to CIC providing care and treatment to A.B., Northwest informed CIC to submit its claims to Northwest for payment.

10. CIC provided care and treatment to A.B. and, as directed, submitted claims to Northwest to be paid for that care and treatment. In fact, CIC provided care and treatment to A.B. from December 2012 through approximately December 2013 and, at various times during this period, submitted timely claims for reimbursement to Northwest. CIC charged Northwest its standard retail rates or billed charges, which CIC believed properly represented the reasonable value of the care and treatment provided to A.B.

11. After CIC would submit its billing statements to Northwest, Northwest would process the claims submitted by CIC and, instead of paying the full amount due, tendered partial payments. CIC is informed and believes, and based thereon alleges that, the payment made by Northwest was in an amount it believed represented the "reasonable" amount of the care and treatment provided by CIC to A.B.

12. The partial payments made (and total amount paid) by Northwest to CIC, however, fell below the amount which was reasonable and customary in the healthcare industry for the products and services provided by CIC to A.B.

13. Northwest had a history of paying the claims submitted by CIC, but unilaterally stopped paying claims. Northwest did not stop paying CIC's claims because it was denying that it had an obligation to pay the claims or that CIC was not entitled to payment for the claims submitted. Instead, CIC is informed and believes, and based thereon alleges, that Northwest stopped paying CIC's later submitted claims because it belatedly believed it paid too much on the earlier submitted claims.

14. Indeed, after CIC completed its care and treatment of A.B., Northwest not only refused to pay the balance due to CIC, despite demand for such payment, but also took the position that it had overpaid CIC, and began demanding that CIC reimburse Northwest for purported "overpayments".

15. CIC does not bring this action based on any assignment of benefits or as an assignee of A.B.

**FIRST CAUSE OF ACTION**

**BREACH OF IMPLIED IN FACT CONTRACT**

(As against Northwest and ROES 1 through 10)

16. CIC incorporates by reference every allegation previously set forth as though fully set forth in this cause of action.

17. Where one party performs for another, with the expectation of payment, a service of a character which is ordinarily charged for and the latter knowingly accepts it in circumstances negating an inference that the service is being provided as a gift, a contract to pay reasonable value is implied.

18. CIC and Northwest entered into an implied in fact contract pursuant to which CIC agreed to provide care and treatment, including medication, to A.B., and Northwest agreed to pay for the care and treatment. CIC performed services for A.B. with Northwest's knowledge, permission and authorization. The services provided by CIC was of the character which is ordinarily charged for. Northwest accepted CIC's care and treatment of A.B. knowing that CIC had no intention of providing said care and treatment as a gift. Northwest made no other arrangements to have another medical provider supply the medically necessary care and treatment to A.B., and it routinely received bills from CIC, and paid those bills.

19. Specifically, (a) CIC provided care and treatment, including medication, to A.B. at A.B.'s request, (b) Northwest was aware that CIC was going to and did, in fact, provide to A.B. with the requested care and treatment; (c) Northwest was aware that CIC would be looking to Northwest for payment for said care and treatment, (d) Northwest directed CIC to submit its claims to Northwest for review and payment; (e) Northwest routinely paid CIC's bills, (f) the reasonable value of the care and treatment provided by CIC to A.B. is $1,239,031.71, and (g) Northwest paid a total of $470,314.83.

20. In fact, as alleged, Northwest accepted the claims submitted by CIC and made a series of payments to CIC on the claims submitted in an amount it believed was the reasonable value of the care and treatment. Northwest later changed its belief on what was the reasonable amount and began taking the position that it had "overpaid." As a result of this belatedly adopted "overpayment" position, Northwest refused to make further payments even though the claims being submitted were the very type of claims that Northwest had previously accepted and paid.

21. CIC performed all of its obligations under the contract by providing the products and services to A.B.

22. Thereafter, Northwest was obligated to pay CIC for the care and treatment rendered to A.B. pursuant to the terms of the contract.

23. Northwest failed to make full payment required of the contract.

24. As a direct and proximate result of Northwest's conduct as alleged herein, CIC has been damaged in the amount of approximately $768,716.88, or an amount subject to proof at trial, plus interest at the legal rate.

///

///

## SECOND CAUSE OF ACTION

## QUANTUM MERUIT

(As against Northwest and ROES 1 through 10)

25. CIC incorporates by reference every allegation previously set forth as though fully set forth in this cause of action.

26. Quantum meruit is an equitable remedy implied by law in order to prevent unjust enrichment where a plaintiff who has rendered services may recover the reasonable value of those services.

27. CIC supplied Northwest's member AB. with specialty pharmaceutical products and services pursuant to Northwest's request, authorization and/or agreement, and continued to provide the products and services based on Northwest's agreement that it would reimburse CIC for its provision of said products and services. CIC's provision of medical services was necessary to prevent serious bodily harm or suffering by members assigned to Northwest.

28. Northwest has a duty to pay a reasonable and customary sum for medication and medical services rendered to members assigned to it, but has paid less than that sum for CIC's services, if at all.

29. Indeed, the reasonable value of the services provided by CIC to A.B. is $$1,239,031.71, of which $768,716.88 remains unpaid.

30. Northwest has received the benefits of CIC's services because Northwest received payments to bear the responsibility to administer and pay medical claims. Northwest has thus been unjustly enriched at CIC's expense.

31. As a direct and proximate result of Northwest's conduct as alleged herein, CIC has been damaged in the amount of approximately $768,716.88, or an amount subject to proof at trial, plus interest at the legal rate.

**THIRD CAUSE OF ACTION**

**OPEN BOOK ACCOUNT**

(As against Northwest and ROES 1 through 10)

32. CIC incorporates by reference every allegation previously set forth as though fully set forth in this cause of action.

33. CIC and Northwest had a financial transaction that involved the provision of medication and services by CIC to Northwest's member A.B., and Northwest's agreement to pay CIC a specific sum in return.

34. CIC has maintained an accounting of the debits and credits involved in the transaction between CIC and Northwest. CIC has kept a record of debits and credits in the form of a permanent ledger, the data in which is supported by Northwest's ongoing and contiguous claims adjudications. These books show against whom and in whose favor the account charges were made.

35. The account remained open during the period while Northwest was continuing its efforts to process the claims at issue.

36. Despite CIC's demands to Northwest, payment for the medication and services rendered by CIC to A.B. has not been paid, and there is now due and owing to CIC by Northwest, the amount of approximately $768,716.88, or an amount according to proof at trial, plus interest.

**FOURTH CAUSE OF ACTION**

**ACCOUNT STATED**

(As against Northwest and ROES 1 through 10)

37. CIC incorporates by reference every allegation previously set forth as though fully set forth in this cause of action.

38. On or about December 26, 2012, at Los Angeles, California, and multiple times thereafter, an account was stated by and between CIC and Northwest in which it was stated that Northwest was indebted to CIC in the sum of $1,239,031.71, plus interest.

39. Despite demand by CIC to Northwest, no part of the sum owed has been paid except a total of $470,314.83, leaving a balance due and owing in the amount of $768,716.88, plus interest.

**FIFTH CAUSE OF ACTION**

**GOODS AND SERVICES RENDERED**

(As against Northwest and Does 1 through 10)

40. CIC incorporates by reference every allegation previously set forth as though fully set forth in this cause of action.

41. Northwest requested that CIC provide medication and related services to A.B.

42. CIC provided the medication and services as requested.

43. Northwest has admitted and ratified its responsibility to pay CIC for the goods and services by making partial payments on the claims.

44. In spite of the requests for payment made by CIC to Northwest, the reasonable value of the goods and services rendered has not been paid and there is now due and owing approximately $768,716.88, or an amount according to proof at trial, plus interest.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against Northwest and ROES 1 through 10, inclusive, as follows:

A. For an order directing restitution in an allowable amount to be proved at trial in excess of the jurisdictional minimum;

B. For monetary relief in an amount to be proven at trial;

C. For pre-judgment and post-judgment interest at the legal rate; and,

///

///

D. For such other or further relief as the court may deem just or proper.

Dated: September 2, 2014

**MICHELMAN & ROBINSON, LLP**

By: ______________________
Andrew H. Selesnick
Stacey L. Zill
Attorneys for Counter-Plaintiff
COMPLETE INFUSION CARE, CIC INC.

**DEMAND FOR JURY TRIAL**

Counter-Plaintiff Complete Infusion Care, CIC Inc. hereby demands a trial by jury.

Dated: September 2, 2014

**MICHELMAN & ROBINSON, LLP**

By: ______________________
Andrew H. Selesnick
Stacey L. Zill
Attorneys for Counter-Plaintiff
COMPLETE INFUSION CARE, CIC INC.

10

COMPLETE INFUSION CARE, CIC INC.'S FIRST AMENDED COUNTERCLAIMS

368823